Filed 9/8/25  P. v. Tucker CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br><br>BRETT RICHARD TUCKER,<br><br>      Defendant and Appellant. | A170502<br><br>(Mendocino County<br>Super. Ct. No. 22CR01745) |

After defendant Brett Richard Tucker entered into a negotiated disposition, the trial court imposed and suspended execution of a nine-year prison sentence and placed him on two years probation subject to numerous terms and conditions.  Tucker challenges three conditions relating to substance abuse treatment, asserting they are "vague and contradictory" and impermissibly delegate judicial authority to the probation department.  We agree two of the challenged conditions are contradictory and one impermissibly delegates judicial authority.  We therefore reverse and remand for further proceedings.

## BACKGROUND

In October 2022, the Mendocino County District Attorney filed an information charging defendant with 21 counts of illegal possession of a weapon by a felon.  The charges included allegations defendant had

1

previously been convicted of being a felon in possession of a firearm, unlawful possession of ammunition, and possession of controlled substances. Collectively, the charges carried a maximum penalty of nine years in state prison.

A year and a half later, in February 2024, defendant entered into a negotiated disposition pursuant to which he would plead no contest to 10 of the counts, the court would impose but suspend execution of a nine-year prison term, he would be placed on two years probation, and the remainder of the charges would be dismissed with a *Harvey*[1] waiver. At the change of plea hearing, the recitation of the factual basis included that he had been found in possession of "10 separate firearms" and had previously sustained three felony convictions. Defendant waived time for sentencing, and the matter was put over for preparation of a sentencing report.

Probation filed a sentencing report the following month. The report chronicled the events leading to the current charges and, among other things, recited that in addition to the 21 firearms located during a search, officers found 7.1 GFW (gram formula weight) of suspected methamphetamine, 5.9 GFW of psilocybin mushrooms, a digital scale with methamphetamine and heroin residue, 17 plastic totes of marijuana, two of which contained 10 one-pound bags of fully processed marijuana and the remainder of which contained marijuana at various stages of processing, and a "false book" which contained 100 " 'tabs' " of LSD and 30.8 GFW of suspected heroin. Defendant was reported as having an extensive criminal history involving guns and drugs and as admitting he was selling drugs on the internet through social media applications on his cell phone. He also admitted that for the preceding five years he had used methamphetamine daily. When asked if he would

---

[1] *People v. Harvey* (1979) 25 Cal.3d 754.

participate in drug court or substance abuse programs, he stated he was "opposed to engaging in any type of substance abuse treatment." Given defendant's prior criminal history, the seriousness of the current convictions and facts underlying them, that defendant had "struggl[ed] with substance addiction issues for quite some time," his refusal to acknowledge "his addiction issues," and his unwillingness to participate in any substance abuse program, probation was of the opinion a suspended sentence and another opportunity on supervision "would be futile." Probation therefore recommended probation be denied and defendant be sentenced to nine years in state prison.

In light of probation's recommendation, the matter was continued again for sentencing. The court indicated, however, it remained amenable to suspending execution of sentence and placing defendant on probation. And, at counsel's request, the court directed probation to provide proposed terms and conditions of probation.

Prior to the hearing, defendant reviewed and signed a form "Order of Formal Probation" (some capitalization omitted) in which a number of the 44 conditions were checked with an "x" in the box adjacent to the condition. By signing the form, defendant attested that he had "read and fully underst[ood] all the foregoing requirements" of his probation.

The checked conditions relating to substance abuse, provided as follows:

> "10a. You shall not use or have in your possession or under your control any marijuana. Further, you shall not use or have in your possession or under your control, narcotics, other illegal, restricted drugs or any paraphernalia. [¶] . . . [¶]
>
> "11. You shall submit to and complete a physical examination and/or chemical testing for the purpose of detecting the presence of alcohol, marijuana, narcotics, or other illegal drugs when so ordered by any

3

peace officer. You shall not purposely attempt to dilute the specimen and you may not possess chemicals or herbal supplements to aid in such process. [¶] . . . [¶]

"20a. You shall promptly be evaluated by a substance abuse specialist and successfully complete the recommended course of treatment. Treatment may involve an outpatient program or more intensive residential program; depending on your level of use. You shall provide proof of enrollment to your Probation Officer and sign any required releases of information, to allow Probation to monitor your treatment plan and progress.

"20b. The court orders residential treatment as a term of probation. The length of any treatment program will be determined by a substance abuse specialist.

"20c. During your probationary period, the Court may authorize you to serve the balance of any jail term in a residential treatment program that has been approved by Probation. You will receive credit for the time you participate in any residential treatment program <u>only</u> if you successfully complete that program.

"[BT] You agree to waive credits towards any jail sentence or future prison commitment (should probation ever be permanently revoked), for all days spent in said program if you fail to complete the residential treatment program; even if you are otherwise entitled to them, within the meaning of Section 2900.5 of the Penal Code. [¶] . . . [¶]

"25. You shall attend Alcoholics/Narcotics Anonymous meetings as directed by the Probation Department, and show proof of attendance to your Probation Officer on a regular basis, as ordered."

At the sentencing hearing, the trial court reaffirmed it would pronounce sentence in accordance with the negotiated disposition. The court thereupon found "unusual circumstances" warranted the grant of probation, imposed and suspended imposition of a nine-year prison term, and placed defendant on two years formal probation subject to the terms and conditions set forth in the form order. The court then enumerated, in somewhat

4

summary fashion, the terms and conditions of probation, stating the written order "applies even if" the court failed to mention a term or condition therein at the hearing.

After the court summarized conditions 20a, 20b, and 20c, instead of quoting them verbatim, the probation representative interjected that probation was recommending "that the Court order the defendant to complete a residential treatment, term 20-B, just that the length of the program will be determined [¶] . . . [¶] by a substance abuse specialist." The court responded, "Okay." This precipitated an objection by defense counsel that there was no "nexus" for such condition. The prosecutor then pointed out multiple illegal substances had been found during the search of defendant's residence and associated property. The court, in turn, identified a number of the substances and found there was, indeed, a "nexus" between the condition and defendant's conduct, stating, "I will order those terms." Counsel made no further objection to the terms and conditions, and defendant stated on the record he accepted "the terms of [his] probation as the court has outlined."

## DISCUSSION[2]

### *There is no Uncertainty as to the Probation Terms and Conditions the Court Imposed*

We first address defendant's assertion that the trial court's statements on the record—specifically, its less than precise recitation of conditions 20a through 20c, and its "okay" response to the probation representative—leave defendant wondering as to exactly which conditions apply to him.

---

[2] We review constitutional challenges to the facial validity of probation conditions, as defendant makes here, de novo. (*People v. Smith* (2022) 79 Cal.App.5th 897, 902 (*Smith*).)

Putting aside for the moment the other issues defendant raises as to conditions 20a through 20c, there can be no serious question as to the conditions the court imposed. To begin with, in the "Order of Formal Probation" (some capitalization omitted) the boxes for conditions 20a through 20c are all clearly checked, and at the end of this document, defendant expressly attested that he "read and fully understand[s] all the foregoing requirements" of his probation. At the sentencing hearing, as the trial court ticked through the terms and conditions, it told defendant, "if I don't mention one it doesn't mean they don't apply. If the box is checked when you signed this form, it still means that that term applies even if I didn't mention it this morning."

When the court came to conditions 20a, 20b, and 20c, it did not, as we have observed, quote them verbatim. Specifically, the court did not quote condition 20b, but instead stated, "If in the future the court orders residential treatment as a term of probation, that treatment will be—the length of the program will be determined by the substance abuse specialist." The probation representative then pointed out probation was, in fact, recommending that "the Court order the defendant to complete a residential program, term 20-B, just that the length of the program" to be determined by a substance abuse specialist. And, indeed, this is exactly the language of condition 20b in the "Order of formal Probation" (some capitalization omitted)—i.e., that "[t]he Court orders residential treatment as a term of probation. The length of any treatment program will be determined by a substance abuse specialist." Thus, the court's response of "Okay" to the probation representative makes perfect sense; the representative simply corrected the court as to the exact wording of condition 20b.

6

In short, it is plainly apparent from the record that the trial court intended to impose the conditions identified in the "Order of Formal Probation," (some capitalization omitted) and specifically, conditions 20a through 20c.

### Conditions 20a and 20b are Contradictory and Condition 20a Impermissibly Delegates Judicial Authority

Defendant next complains conditions 20a, 20b, and 20c are "contradictory." We agree as to conditions 20a and 20b.

Condition 20a states, in pertinent part, "You [the defendant] shall promptly be evaluated by a substance abuse specialist and successfully complete the recommended course of treatment. Treatment may involve an outpatient program or more intensive residential program; depending on your level of use." Condition 20b states, however, "The Court orders residential treatment as a term of probation. The length of any treatment program will be determined a substance abuse specialist."

As defendant points out, these two conditions cannot both be operative—either he is to be evaluated by a substance abuse specialist who will, based on that assessment, recommend a course of treatment, which may involve an out-patient or residential program (condition 20a), or he must, without further assessment, enter a residential treatment program, the length of which will be determined by a substance abuse specialist (condition 20b). In short, only one of these conditions can be operable, but not both. (See *In re Victor L.* (2010) 182 Cal.App.4th 902, 930 [while courts "understand the utility of preprinted forms containing various possible conditions of probation, which the court may simply check off in determining which conditions to impose in a given case, . . . thought must be given in each case to the specific language of the condition, the particular offense, and the

7

background of the [defendant], so that the conditions are internally consistent, reasonably clear, and closely tailored to the rehabilitative needs of the individual before the court"].)

Condition 20c provides that "During your probationary period, the Court may authorize you to serve the balance of any jail term in a residential treatment program that has been approved by Probation. You will receive credit for the time you participate in any residential treatment program only if you successfully complete that program." In contrast to conditions 20a and 20b which set forth what a defendant may be required to do at the outset of the probationary term—he or she must either report for assessment by a substance abuse specialist and complete the treatment program recommended by the specialist (condition 20a) or immediately enter a residential treatment program and remain in such program for the period of time determined by a substance abuse specialist (condition 20b)—condition 20c applies if a defendant's probation is later revoked and he or she is required "to serve the balance of any jail term." Thus, condition 20c is not "contradictory" to either condition 20a or condition 20b.

Because we must reverse and remand the case given that conditions 20a and 20b are contradictory, we need not consider defendant's improper-delegation-of-judicial-authority argument. Nevertheless, we point out this argument only applies to condition 20a.[3] As for that condition, we agree it impermissibly delegates judicial authority to determine whether defendant attends an out-patient or residential treatment program. (See *People v. Smith, supra,* 79 Cal.App.5th at pp. 902–903 [invalidating condition that

---

[3] Condition 20b is a direct exercise of the court's judicial authority, and condition 20c is an advisement and warning the court may exercise its authority at a future time.

required the defendant " 'to participate in any treatment/therapy/counseling program, including residential, as directed by the probation officer' " and remanding for probation officer "to determine whether residential treatment is required and remand for the trial court to decide if it wishes to mandate residential treatment"].)  While the Attorney General maintains the condition should be read as an affirmative decision *by the court* that a residential treatment program *is* appropriate and *shall be* the requirement if defendant's abuse problem is determined by the abuse specialist to be sufficiently severe to warrant such treatment, as a practical matter the substance abuse specialist, rather than the court, is making the decision as to whether defendant attends out-patient treatment or is committed to a residential facility.[4]

The Attorney General's reliance on *People v. Penoli* (1996) 46 Cal.App.4th 298 (*Penoli*), is misplaced.  The probation condition challenged in *Penoli* required the defendant to "enter a residential drug treatment program 'as approved by the Probation Officer,' and that she

---

[4]  The record contains no information about the "substance abuse specialist."  We note such specialists work in both the private and public sectors.  In the former, they are subject to regulation and certification by the state Department of Health Services.  (See https://www.dhcs.ca.gov/provgovpart/Pages/CounselorCertification.aspx [as of Sept. 8, 2025] [overview of quality oversight and certification].)  In the latter, they may be part of the county court system (see, e.g., San Diego Superior Court Web site Criminal/Substance Abuse/SAAU, https://www.sdcourt.ca.gov/sdcourt/criminal2/criminalsubstanceabuse/criminalsaau [as of Sept. 8, 2025].)  All we can derive from the language of the probation condition here, since it refers separately to "a substance abuse specialist," "your Probation Officer," and "Probation," is that the substance abuse specialist is not a probation officer.  In any case, the parties make no argument the apparently distinct status of the substance abuse specialist makes any difference to the delegation-of-judicial-authority analysis.

9

'remain there until she has successfully completed that program (with no credit for time served while in the program).' " (*Id.* at p. 301.)  In other words, there was no uncertainty as to whether the defendant was going to participate in an outpatient or residential program—the only question was which residential program.  And it was permissible to leave that detail to probation.  As the court explained, "any attempt to specify a particular program at or prior to sentencing would pose serious practical difficulties.  The trial court is poorly equipped to micromanage selection of a program, both because it lacks the ability to remain apprised of currently available programs and, more fundamentally, because entry into particular program may depend on mercurial questions of timing and availability.  The specified program may decline to accept the defendant, for instance, or may be unable to do so for reasons as mundane as lack of space." (*Id.* at p. 308.)  Condition 20a is distinctly different and impermissibly leaves to someone other than the court the threshold decision whether defendant is to attend an outpatient or residential program.  (*Smith, supra,* 79 Cal.App.5th at pp. 902–903.)

## DISPOSITION

The sentencing order is reversed as to the imposition of probation conditions 20a, 20b, and 20c, and the matter is remanded for further proceedings consistent with this opinion as to those conditions.

1

                                        _____
                                        Banke, Acting P.J.


We concur:


_____
Langhorne Wilson, J.


_____
Smiley, J.


A170502, People v. Tucker

1